IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JIMMIE FORD, B18015,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:11-cv-00992-PMF |
| | ) |
| **MAGID FAHIM,** | ) |
| | ) |
| **Defendant.** | ) |

### ORDER

**FRAZIER, Magistrate Judge:**

Before the Court is defendant Dr. Magid Fahim's "Motion for Judgment as a Matter of Law Or, Alternatively, Motion for a New Trial." (Doc. 158). For the following reasons, the defendant's motion is DENIED.

Dr. Fahim argues that he is entitled to judgment as a matter of law pursuant to Rule 50 because plaintiff Jimmie Ford presented insufficient evidence to support a finding of deliberate indifference. A deliberate indifference to serious medical needs claim, as its name suggests, consists of two components; (1) that the plaintiff suffered from an objectively serious medical condition and (2) that the defendant was deliberately indifferent to it. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Dr. Fahim does not dispute that that Ford suffered from a serious medical need, but instead contends that there was not a legally sufficient evidentiary basis to support a finding that he was deliberately indifferent to Ford's condition.

This is a straightforward dispute; Ford testified at trial that on May 15, 2011 he sent Dr. Fahim a letter through the institutional mail stating that his albuterol inhaler was empty and that he needed a new inhaler. Ford later had an asthma attack on the night of May 23, 2011. Dr. Fahim testified that he never received such a letter. It's undisputed that Ford and Dr. Fahim

1

never discussed the inhaler issue in person and that the letter is not included in Ford's medical records. Dr. Fahim therefore asserts that Ford failed to present any evidence that he (Dr. Fahim) had any actual knowledge that Ford needed a new inhaler, and thus there is insufficient evidence to find that there was deliberate indifference.

The Court disagrees with the defendant. "[I]t is well-established that evidence of proper mailing raises a rebuttable presumption of delivery." *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 476 (7th Cir. 2009). Ford testified that he sent the letter to Dr. Fahim on May 15, 2011 using the prison's institutional mail, and a copy of the letter was presented at trial. Intra-prison mail service is of course not the same as the United States Postal Service, but Ford provided a sufficient evidentiary basis on which the jury could infer that Dr. Fahim received and was aware of the letter. Fahim argues otherwise, stating in his present motion that "If this standard is to be utilized, Dr. Fahim and others similarly situated could now be held liable for the shortcomings of the many people involved the prison mail conveyance process." Dr. Fahim is correct in that "the damages remedy available under 42 U.S.C. § 1983 establishes a remedial scheme focused primarily on the responsibilities of individual government employees and agents." *Daniel v. Cook Cty.*, No. 15-2832, 2016 WL 4254934, at *3 (7th Cir. Aug. 12, 2016). However without any evidence that the intra-prison mail service is dysfunctional or that Ford's letter was obstructed in some manner (aside from Dr. Fahim's own testimony that he never received the letter), based on the evidence presented the jury could legitimately infer that Dr. Fahim received and reviewed Ford's letter.

Dr. Fahim also argues that the evidence was insufficient for an award of punitive damages. In asserting that punitive damages are inappropriate, Dr. Fahim essentially reiterates his argument that Ford presented insufficient evidence to sustain a verdict for *any* amount of

damages. As previously noted, there was sufficient evidence to support a finding of deliberate indifference. Moreover, the jury could further find that Dr. Fahim's failure to complete the simple task of refilling the inhaler prescription was a manifestation of complete indifference to Ford's rights and safety. See *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 1640, 75 L. Ed. 2d 632 (1983).[1]

If the Court declines to grant his request for judgment as a matter of law, Dr. Fahim asserts in the alternative that he should receive a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. "[T]he district court has broad discretion in determining whether or not to grant a new trial." *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 516 (7th Cir. 1993). When presented with a Rule 59 motion for a new trial courts must consider whether "the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Marcus & Millichap Inv. Servs. of Chicago, Inc. v. Sekulovski*, 639 F.3d 301, 313 (7th Cir. 2011). But the movant "bear[s] a 'particularly heavy burden' because a court will set aside a verdict as contrary to the manifest weight of the evidence 'only if no rational jury could have rendered the verdict.'" *Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 444 (7th Cir. 2009) (quoting *Moore ex. rel. Estate of Grady, v. Tuleja*, 546 F.3d 423, 427 (7th Cir.2008)).

Dr. Fahim's request for a new trial is based primarily on two evidentiary rulings that he asserts were improper. First, Dr. Fahim argues that a portion of Ford's complaint was improperly admitted. During Dr. Fahim's cross examination by plaintiff's counsel, plaintiff's counsel directed Dr. Fahim to read a sentence in Ford's November 8, 2011 complaint. The sentence stated that Ford sent a letter to the "medical supervisor or director" complaining of the inhaler issue. Prior to Dr. Fahim reading the sentence from Ford's complaint, the undersigned notified

---

[1] The jury was given the Seventh Circuit pattern jury instruction for punitive damages.

the jury that statements contained in the complaint are allegations only. After the portion from Ford's complaint was read, plaintiff's counsel questioned Dr. Fahim as to whether he thought that Ford was lying when he stated that he sent the letter. Dr. Fahim responded stating that "Again, I am not Mr. Ford. I cannot speak for him." Plaintiff's cross examination then went on to another topic.

As the defendant states in the present motion, "One of the key questions at the trial (in fact the only key question) in this matter was whether or not Dr. Fahim had actual knowledge that the plaintiff was out of his Albuterol." Dr. Fahim testified that he never saw the letter, thereby implying that Ford's testimony that he sent the letter was a post hoc fabrication in order to support his lawsuit, or that the letter was somehow obstructed on its way to Dr. Fahim. It was further noted that no letters were found in Ford's medical file.

Assuming *arguendo* that the portion of the complaint is hearsay, any prejudice to Dr. Fahim is negligible at best. Pursuant to Rule 801(d) of the Federal Rules of Evidence, a statement is not hearsay if "[t]he declarant testifies and is subject to cross-examination about a prior statement, and the statement … is consistent with the declarant's testimony and is offered … to rebut an express or implied charge that the declarant recently fabricated it [.]" This exception to the hearsay rule is essentially applicable to the portion of Ford's complaint that was introduced at trial. Dr. Fahim's testimony implied that the Ford's testimony about the letter was a post hoc fabrication. Introducing the portion of the complaint allowed Ford to rebut Dr. Fahim's implications. Moreover, the portion of the complaint was entirely consistent with Ford's testimony at trial.

Dr. Fahim also argues that evidence of Wexford's policies and procedures were improperly admitted at trial. Dr. Fahim filed a motion in limine (#8) seeking to bar any IDOC or

4

Wexford policies and protocols. (Doc. 119). The motion in limine was granted. (Doc. 131). However, during the cross examination of Dr. Fahim, plaintiff's counsel questioned Dr. Fahim as to some of Wexford's written policies. Upon review, the Court finds that Dr. Fahim's testimony on direct examination opened the door to plaintiff's counsel's questioning regarding Wexford's policies. During direct examination, Dr. Fahim's testified as to his role in the administration of prescription drugs to prisoners. Dr. Fahim's testimony suggested that his role in the process was minimal. But according to Wexford's written policies that were presented on cross examination, "the facility medical director [i.e., Dr. Fahim during the period in question] will determine the prescriptive practices in the facility." Wexford's written policies therefore indicated that Dr. Fahim played a larger role in the administration of drugs at Menard than his testimony would suggest. Additionally, the jury was provided with a limiting instruction that stated in part; "the issue is whether Defendant was deliberately indifferent to a serious medical need, not whether an administrative policy might have been violated." Seventh Circuit Pattern Instruction 7.04. District courts may assume that juries follow the instructions given.

In sum, Dr. Fahim's motion (Doc. 158) is denied. Dr. Fahim has failed to establish that he is entitled to judgment as a matter of law, or a new trial. Dr. Fahim's request to reduce the punitive damage award is also denied.

**IT IS SO ORDERED.**

**DATED:  September 2, 2016.**

*s/Philip M. Frazier*
**PHILIP M. FRAZIE**
**UNITED STATES MAGISTRATE JUDGE**